**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| LAUREN N. SMITH, on behalf of Q.D.S., a minor child, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:17CV411-PPS/MGG |
| | ) | |
| NANCY BERRYHILL, Acting Commissioner of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Lauren Smith, on behalf of her son, appeals the Social Security Administration's

decision to deny application for Social Security disability benefits.  An administrative

law judge found that Smith's son, Q.D.S., was not disabled within the meaning of the

Social Security Act. Smith raises three issues that she says support remand.  Because I

agree that the ALJ applied the wrong standard in determining whether Q.D.S. was

disabled, I will reverse and remand the Commissioner's decision.

**Background**

On November 19, 2013, Lauren Smith filed an application for Supplemental

Security Income on behalf of Q.D.S., a minor child.  Smith alleged a disability onset date

of May 1, 2013.  The ALJ held a hearing on February 10, 2016.  At the time of the alleged

onset date, Q.D.S. was six years old; at the time of the hearing, Q.D.S. was eight.  On

April 29, 2016, the ALJ found that Q.D.S. was not disabled since the alleged onset date.

The Appeals Council denied Smith's request for review.

The ALJ's decision contains a thorough review of the facts and medical evidence in this case, so I will not repeat them here. In denying Q.D.S.'s application, the ALJ employed the three-step sequential evaluation process for determining whether a child is disabled. *See* 20 C.F.R. § 416.924(a). First, the ALJ found that Q.D.S. was not engaged in substantial gainful activity. *Id.* § 416.924(b). Second, the ALJ considered whether Q.D.S.'s impairments were severe, i.e., they did not significantly limit his ability to perform basic work activities. *Id.* § 416.924(c). At this step, the ALJ found that Q.D.S. had several severe impairments, including attention deficit hyperactivity disorder, oppositional defiant disorder, and facial tics. Third, the ALJ considered whether Q.D.S.'s impairments met, medically equaled, or functionally equaled an impairment described in the children's Listings found in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* §§ 416.924(d), 416.925.

This last step required the ALJ to consider Q.D.S.'s functioning in six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being. *Id.* § 416.926a(b)(1). "Marked" limitations in two of the six domains, or an "extreme" limitation in one domain, means that a child is disabled. *Id.* § 416.924a(d). The ALJ here found that Q.D.S. did not have "marked"

limitations in two domains and did not have an "extreme" limitation in any domain. The ALJ thus concluded that Q.D.S. was not disabled.

## Discussion

Smith makes three arguments which she believes call for remand. It is important to keep in mind that review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then I must affirm the decision. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making a substantial evidence determination, I must review the record as a whole, but I cannot re-weigh the evidence or substitute my judgment for that of the ALJ. *Id*.

Smith argues that the ALJ erred by inaccurately naming Q.D.S. a "preschooler" during the relevant period and applying the preschooler standard in his analysis evaluating the six domain areas. As I will explain in a moment, this is a critical error because Q.D.S. was never a preschooler during the relevant period, but instead was a "school age child" throughout this time.

In the event that a child's severe impairments do not meet or medically equal any listing, Step Three of the three-step sequential evaluation process requires the ALJ to assess the child's functional limitations caused by the child's impairments to determine functional equivalence. 20 C.F.R. § 416.926a(a). As noted earlier, there are

six broad areas of functioning, called "domains."  *Id.* § 416.926a(b)(1)(i)-(vi).  When

evaluating a child's ability to function in each domain, the ALJ is to consider

information that will help him answer certain questions about "whether your

impairment(s) affects your functioning and whether your activities are typical of other

children *your age* who do not have impairments."  *Id.* § 416.926a(b)(2) (emphasis added).

The inquiry is thus inherently comparative with the reference point being children of

the same age who have no impairments.

In making the appropriate comparison, the regulations provide detailed

explanations of what the ALJ is to consider in assessing each domain.  There is both a

"general" description of the types of activities that make up the domain and a more

specific description labeled "age group descriptors."  In this specific age group

description, the regulations break down the activities that children of defined age

groups should be able to accomplish.  "Preschool children," which is defined as

children from age 3 to the attainment of age 6, are distinguished from "school-age

children," which is defined as age 6 to the attainment of age 12.  *E.g., id.*

§ 416.926a(g)(2)(iii), (iv) (providing examples of activities that constitute "acquiring and

using information" for preschool versus school-age children). Obviously, school-age

children are expected to be more advanced than preschool children.

Here, the ALJ cited both the "preschool children" and "school-age children"

standards for each of the six domains.  But only the school-age children standard was

appropriate to Q.D.S.'s evaluation. *See Kline ex rel. J.H.-K. v. Colvin*, 2014 WL 69953, at

*15 (N.D. Ill. Jan. 9, 2014) ("the claimant's age as of the time of the decision governs in

applying the regulations."). Although the Commissioner argues that this was

essentially a harmless error because the ALJ ultimately applied the correct standard, I

am not so sure. To illustrate this, I will highlight just one of the six domains analyzed

by the ALJ.

The first domain that the ALJ analyzed, citing both standards, is "acquiring and

using information." As the ALJ explained, this refers to how well a child is able to

acquire or learn information and how well a child uses the information he has learned.

By way of examples, the regulations provide that a preschooler without an impairment

should begin to learn and use the skills that will help him read and write and do

arithmetic when he is older. Some examples include listening to stories, rhyming

words, matching letters, counting, sorting shapes, building with blocks, painting,

coloring, and using scissors. Preschoolers should understand the order of daily

routines and tell stories. [A.R. at 31 (citing 20 C.F.R. § 416.926a(g)(2)(iii).]

Contrast that to the examples provided in the school-age child description.

Without an impairment, a school-age child should be able to learn to read, write, and do

math, and should be able to discuss history and science. They should be able to

produce oral and written projects, solve math problems, take achievement tests, and do

group work. [A.R. 31 (citing 20 C.F.R. § 416.926a(g)(2)(iv).]

The ALJ found that Q.D.S. had less than marked limitations in this domain. The ALJ focused on Q.D.S.'s grades, which ranged from Cs to Fs, as well as his IQ of 81, which placed him in the borderline to low average range. The ALJ noted that there had been improvement, as one year his grades ranged from As to Cs and his teacher noted that there had been improvement since he began taking medication. The ALJ also considered the consultative psychological examination, which found that Q.D.S.' verbal and perceptional reasoning scores were in the average range. [A.R. at 32.]

Based on this analysis, I am unable to discern whether the ALJ considered Q.D.S.'s functioning in the context of children his own age. There is no discussion of any of the examples provided for school-age children in the regulations. Because of this lack of analysis, there is not enough detail to permit meaningful review. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Thus, the ALJ erred in citing the wrong age category and failing to analyze Q.D.S.' limitations in each domain as compared to children of the same age who do not have impairments. *See Kline*, 2014 WL 69953 (reversing an ALJ's decision that applied wrong age category).

I am also troubled by the ALJ's treatment of the teacher questionnaire, which Smith also challenges. The ALJ consistently refers to this questionnaire as proof of Q.D.S.'s less than marked limitations in several of the domains because the teacher observed that Q.D.S.'s behavior improved while he was taking ADHD medication. However, while the teacher questionnaire expressly says that there have been recent

improvements in Q.D.S.'s functioning since he was put on medication, the

questionnaire also refers to "obvious problems" in many areas of functioning. For

example, the teacher indicated that out of 10 activities that make up the acquiring and

using information domain, he had an "obvious problem" in seven of them. He had a

"serious problem" in one area, and a "slight problem" in two. [A.R. at 187.]

This is not even the worst of it. For the "attending and completing tasks"

domain, the teacher indicated that he had a "serious problem" with four activities, an

"obvious problem" with six activities, and a "very serious problem" with one activity.

Moreover, the questionnaire repeatedly notes that these problems occur hourly or daily.

[*Id.* at 188.] So even though Q.D.S.'s teacher noted that he had improved, she still

observed that Q.D.S. was having obvious or serious problems in many of the activities

she was evaluating. The ALJ completely failed to acknowledge this.

Although I am not permitted to reweigh evidence or reevaluate credibility

determinations made by the ALJ, the ALJ's decision must still be supported by

substantial evidence. And the ALJ must build an accurate and logical bridge from the

evidence to the conclusion. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). By

concluding that improvement equaled a less than marked limitation, the ALJ failed to

build an accurate and logical bridge. Because of this, and because it is not clear to me

what standard the ALJ applied in evaluating the six domains, remand is appropriate.

Smith also raises a third argument on which I express no view. On remand,

however, the ALJ should consider that argument and address it appropriately.

## Conclusion

For all of the above reasons, the final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this Opinion and Order.

**SO ORDERED**.

ENTERED: July 11, 2018.

_s/ Philip P. Simon_
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**